NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DENISE R. SMITH, | : |
| Plaintiff, | : |
| | : Civil No. 20-9120 (RBK/AMD) |
| v. | : |
| | : **OPINION** |
| SHERLETTE NADINE SMITH, *et al.*, | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Complaint (Doc. No. 1 ("Compl.")) and Application to proceed *in forma pauperis* ("IFP") (Doc. No. 1-1) filed by Plaintiff Denise R. Smith. Plaintiff alleges that after she filed domestic violence charges against her wife, Defendant Sherlette Nadine Smith, a host of state and local officials conspired to pressure her to drop the charges, violating her constitutional rights. Among other things, Plaintiff now seeks damages and to revoke her wife's U.S. citizenship. Because Plaintiff has applied to proceed IFP, the Court must *sua sponte* screen her Complaint pursuant to 28 U.S.C. § 1915(e)(2). For the reasons set forth below, Plaintiff's Application to proceed IFP is **GRANTED** but her Complaint is **DISMISSED**.

**I.    BACKGROUND**

Plaintiff and Sherlette were married on December 31, 2018. (Compl. at ¶ 17). Although Sherlette had been married twice before, she did not disclose these prior marriages to Plaintiff; Plaintiff alleges that Sherlette entered into these marriages solely to gain U.S. citizenship. (*Id.* at

¶¶ 18–19). On July 12, 2019, Sherlette attacked Plaintiff by violently strangling her. (*Id.* at ¶ 21). Plaintiff filed charges against Sherlette, but dropped these charges on November 21, 2019, allegedly under pressure by Phillip Burnham, Ross Gigliotti, Daniel Rosenberg. (*Id.* at ¶ 22). While Plaintiff does not clearly explain who Burnham and Rosenberg are, Gigliotti was at some point her attorney. (*Id.* at ¶35). In the midst of the pressure campaign, Sherlette filed for divorce in the Superior Court of New Jersey; this action remains pending. (*Id.* at ¶ 20; Doc. No. 2 at 11).

As part of their pressure campaign against her, Plaintiff alleges that Burnham, Gigliotti, and Rosenberg conspired with the Evesham Township Police Department ("ETPD") to engage the SOS feature of Plaintiff's iPhone on October 4, 2019, which the ETPD used as a pretext for coming to Plaintiff's home. (Compl. at ¶¶ 23–25). When the ETPD arrived, they asked Plaintiff to come out of her house or to allow them to come inside. (*Id.* at ¶ 26). In response, Plaintiff asked the officers if they had a warrant; when the officers failed to produce a warrant, Plaintiff closed her door. (*Id.* at ¶¶ 26–27). The officers then knocked down Plaintiff's door. (*Id.* at ¶ 29). Later, the ETPD charged Plaintiff with obstructing administration of law under N.J.S.A. 2C:29–1(a). (Compl. at ¶ 31). The ETPD also wiretapped Plaintiff's cellphone on certain occasions. (*Id.* at ¶ 33).

Plaintiff alleges that various other local and state officials participated in the conspiracy to force her to drop the charges against Sherlette: New Jersey Governor Phillip D. Murphy and New Jersey Attorney General Gurbir S. Grewal failed to act on the numerous complaints she filed with them relating to the conduct of the other Defendants, (*id.* at ¶ 34); Judge Karen Caplan "refused to act in consideration of the conduct of [Plaintiff's] former attorney, Ross Gigliotti," (*id.* at ¶ 35); Judge James Ferrelli ruled in favor Sherlette on various motion in the divorce lawsuit, (*id.* at ¶ 36);

and Judge Caplan, Judge Ferrelli, Burlington County Prosecutor Scott Coffina and Municipal Prosecutor Dimassi[1] "each acted with biased intimidation towards Plaintiff," (*id.* at ¶ 37).

On July 20, 2020, Plaintiff filed her Complaint and her Application to proceed IFP. The Complaint has nine counts: Count I claims Sherlette committed common law fraud against Plaintiff because she had previously committed immigration fraud against the United States, (*id. at* ¶¶ 40–42); Count II brings an assault claim against Sherlette, (*id.* at ¶ 43); Count III brings a battery claim against Sherlette, (*id.* at ¶ 44); Count IV brings an intentional infliction of emotional distress claim against all Defendants, (*id.* at ¶ 45–46); Count V brings a negligence claim against Defendants Governor Murphy, Attorney General Grewal, Evesham Township, the ETPD, ETPD Chief Christopher Chew, Judge Caplan, Judge Ferrelli, Coffina, and Dimassi, (*id.* at ¶¶ 47–50); Count VI brings a 42 U.S.C. § 1985 claim against all Defendants, (*id.* at ¶¶ 51–53); Count VII brings a 42 U.S.C. § 1983 claim against all Defendants, (*id.* at ¶¶ 54–56); Count VIII brings a malicious prosecution claim against Defendants Governor Murphy, Attorney General Grewal, Evesham Township, the ETPD, ETPD Chief Christopher Chew, Judge Caplan, Judge Ferrelli, Coffina, and Dimassi, (*id.* at ¶¶ 57–60); and Count IX brings a New Jersey Civil Rights Act ("NJCRA") claim against all Defendants, (*id.* at ¶ 61).

Plaintiff seeks tens of millions of dollars in damages from Defendants collectively. She also seeks various forms of equitable relief, including having Sherlette's citizenship revoked and having Sherlette, Burnham, Gigliotti, and Rosenberg criminally prosecuted.

## II.     LEGAL STANDARD

The Third Circuit has established a two-step process for deciding applications to proceed IFP. *See Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990). First, the Court must evaluate the

---

[1] Plaintiff does not provide Dimassi's first name.

litigant's financial status and determine whether he or she is eligible to proceed IFP, and second, the Court must screen the litigant's complaint and determine if it should be dismissed. *See Emerson v. Bridgeport Superior Court, Dist. of Fairfield*, No. 11-2662, 2011 WL 3419514, at *2 (D.N.J. Aug. 3, 2011). Based on her declaration in support of her IFP application, the Court finds that Plaintiff has limited financial resources with which to pay court fees, and thus is granted leave to proceed IFP.

At the second step, district courts must review IFP complaints and *sua sponte* dismiss any action or appeal that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Whether a complaint should be dismissed under § 1915 because it fails to state a claim is assessed under the same standard as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Rhodes v. Maryland Judiciary*, 546 F. App'x 91, 93 (3d Cir. 2013).

When evaluating a 12(b)(6) motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation omitted). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

As Plaintiff is proceeding *pro se*, she is held to "less stringent standards" that she would be if represented by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation omitted). Further, the Court is mindful of its "duty to construe [the] pleadings liberally and apply the applicable law, irrespective of whether [plaintiff has] mentioned it by name." *Rose v. Ortiz*, No. 14-1738, 2015 WL 9216589, at *1 (D.N.J. Dec. 16, 2015) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

### III. DISCUSSION

The Court has federal-question jurisdiction to hear this case under 28 U.S.C. § 1331 because Plaintiff is bringing claims under Section 1985 and Section 1983. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. As such, the Court begins by analyzing Plaintiff's Section 1985 claims, followed by her Section 1983 claims. After finding that all of these claims must be dismissed, the Court turns to Plaintiff's state law claims.

#### A. Section 1985

Plaintiff alleges that all Defendants violated Section 1985 by conspiring to deprive her of her constitutional rights. Although Plaintiff does not specify which subsection of Section 1985 she is invoking, because she does not allege that she was an officer of the United States or a party or witness in any action in a court of the United States, only Section 1985(3) is applicable. In order to state a Section 1985(3) claim, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4)

> whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotation omitted). With respect to the second element, "a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an *identifiable class* and that the discrimination against the identifiable class was invidious." *Id.* at 135 (emphasis added).

Plaintiff's complaint contains no allegations suggesting that Defendant's conspiracy was motivated by discriminatory animus against any identifiable class, much less that such discrimination was invidious. Consequently, Plaintiff's Section 1985(3) claim must be dismissed.

### B. Section 1983

Plaintiff alleges that all Defendants violated her Equal Protection and Substantive Due Process rights, incurring liability under Section 1983. Section 1983 "provides a remedy for the violation of rights created by federal law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). To make out a Section 1983 claim, "a plaintiff must demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Id*. While Plaintiff has rung up quite a list of Defendants, her Section 1983 claims against all of them fail, as discussed below.

#### i. Governor Murphy and Attorney General Grewal—Sovereign Immunity

Plaintiff's Section 1983 claims for damages against Governor Murphy and Attorney General Grewal are barred by the doctrine of sovereign immunity. The Eleventh Amendment "has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (internal quotation omitted). Accordingly, New Jersey state agencies "established in the Executive Branch

6

of State Government" qualify for Eleventh Amendment sovereign immunity, "regardless of the relief sought," unless an exception to the immunity rule applies. *See Rhett v. Evans*, 576 F. App'x 85, 88 (3d Cir. 2014) (internal quotation omitted). Those exceptions apply when: (1) Congress abrogates the immunity, (2) a state waives immunity, or (3) when a plaintiff sues individual state officers for prospective relief to end an ongoing violation of federal law. *See MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001).

Governor Murphy and Attorney General Grewal are state officials sued in their official capacities. Therefore, they are entitled to sovereign immunity from Plaintiff's claims for damages. *Kaul v. Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019).

Of course, Governor Murphy and Attorney General Grewal are still subject to suit for prospective relief to end an ongoing violation of federal law. But to obtain prospective relief, Plaintiff must have standing, which requires a plaintiff to show a "'real and immediate threat of repeated injury.'" *Reardon v. New Jersey*, No. 17-5868, 2018 WL 4964548, at *3 (D.N.J. Oct. 15, 2018) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). Plaintiff's Complaint contains no allegations sufficient to carry this burden.

> ii. *Judge Ferrelli—Judicial Immunity*

Judges are immune from damages liability except in two circumstances: (1) judges are liable for "nonjudicial acts, i.e., actions not taken in the judge's official capacity"; and (2) judges are not immune for actions "take in complete absence of all jurisdiction." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000). Plaintiff is suing Judge Ferrelli over adverse rulings he has made during Plaintiff's divorce with Sherlette. (Compl. at ¶ 36). These rulings are clearly judicial acts, and Plaintiff has not alleged any facts indicating that any of these rulings were made in complete absence of all jurisdiction. Thus, Judge Ferrelli is entitled to absolute judicial immunity. *See*

*Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (placing the burden on plaintiff to allege facts showing that judge's actions "were taken in clear absence of jurisdiction").

Further, Plaintiff is unable to seek any injunction relief from Judge Ferrelli. Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." As Plaintiff "has not alleged that a declaratory decree was violated or that declaratory relief is unavailable . . . [her] claim for injunctive relief is barred." *Azubuko*, 443 F.3d at 304.

### iii. Chief Chew—Supervisory Liability

Plaintiff's Complaint identifies three examples of how the ETPD allegedly violated her constitutional rights: (1) by kicking her door down on October 4, 2019, (Compl. at ¶¶ 23–29); and (2) by wiretapping her cell phone, (*id.* at ¶ 33); and by charging her with a violation of N.J.S.A. 2C:29–1(a), (*id.* at ¶ 31). However, Plaintiff has not named as a defendant any individual ETPD officer who actually participated in any of these allegedly violative activities. Rather, the only individual Defendant connected to the ETPD is Chief Chew. While Chew is responsible for the actions of his officers in some sense, he is not liable for their constitutional violations under Section 1983 on a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676 (holding that Section 1983 plaintiffs must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Because Plaintiff's Complaint contains no allegations that Chew was personally involved in any potentially unconstitutional or otherwise illegal activity, she has failed to state a Section 1983 claim against him.

### iv. Evesham Township and the ETPD—Monell *Liability*

Plaintiff's claims against Evesham Township and the ETPD similarly fail. To hold a municipal entity, such as a township or a police department, liable under Section 1983, the plaintiff must demonstrate that her rights were violated by a policy or custom of the entity and that such policy or custom was "the moving force" behind the deprivation of her constitutional rights. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "A policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy, or edict." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotation omitted). A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Monell*, 436 U.S. at 694.

As discussed above, Plaintiff has identified three ways the ETPD may have violated her constitutional rights. However, Plaintiff has failed to point to any policy or custom of the ETPD or of Evesham Township as the "moving force" behind the knocking down of her door, the wiretapping of her cell phone, or the charge filed against her. Consequently, her Section 1983 claims against Evesham Township and the ETPD must be dismissed.

     *v. Burnham, Gigliotti, and Rosenberg—Under Color of Law*

Plaintiff alleges that Burnham, Gigliotti, and Rosenberg conspired with the ETPD to precipitate the October 4 incident. (Compl. at ¶ 24). Yet Plaintiff has failed to properly allege that these Defendants were acting "under color of law" as required by Section 1983. The standard for satisfying the "under color of law" requirement in Section 1983 cases is effectively the same as the standard for demonstrating state action under the Fourteenth Amendment. *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 169 n.1 (3d Cir. 2004) (citing *Rendell-Baker v. Kohn*, 457 U.S.

830, 838 (1982)). The Third Circuit employs three "broad tests" when evaluating whether a private entity is a state actor:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). The plaintiff bears the burden of proof to establish that the Defendant was acting under color of law. *Groman*, 47 F.3d at 638.

Conspiring with the police to violate constitutional rights can constitute state action. *Simmer v. Kehler*, No. 15-2285, 2015 WL 6737017, at *3 (D.N.J. Nov. 2, 2015) (citing *Bailey v. Harleysville Nat'l Bank & Trust*, 188 F. App'x 66, 68 (3d Cir. 2006); *Pugh v. Downs*, 641 F. Supp. 2d 468, 474–75 (E.D. Pa. 2009)). However, the plaintiff "must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (noting that on a motion to dismiss courts "do not consider any conclusory allegations that there was a 'corrupt conspiracy,' 'an agreement,' or 'an understanding' in place between the Defendants and the [government]"). Here, Plaintiff provides nothing more than a conclusory allegation that Burnham, Gigliotti, and Rosenberg were "acting in concert" with the ETPD. (Compl. at ¶ 24). Therefore, Plaintiff's Complaint does not adequately plead that these Defendants were state actors, and her Section 1983 claims against them must be dismissed. *See Simmer*, 2015 WL 6737017, at *4 (finding Plaintiff failed to adequately plead state action where her complaint alleged that the defendant "coordinated by mutual agreement Plaintiff's arrest" with the police).

    vi.  *Remaining Theories and Defendants*

Plaintiff is also bringing Section 1983 claims against Sherlette, Judge Caplan, Coffina, and Dimassi. While Plaintiff alleges that Sherlette's assault was the inciting incident for the conspiracy against her, Plaintiff has not provided any facts indicating that Sherlette was actually involved in said conspiracy, much less that she was a state actor. As such, there are insufficient factual allegations to sustain a Section 1983 claim against Sherlette.

Although Judge Caplan, Coffina, and Dimassi are undoubtedly state actors, Plaintiff's sole allegation against them is that they "acted with biased intimidation towards Plaintiff." (Compl. at ¶ 37). Such a vague and conclusory allegation is plainly inadequate to meet the *Iqbal* pleading standard.[2] Consequently, Plaintiff's Section 1983 claims against these Defendants must be dismissed.

### C.  State Law Claims

With dismissal of all of Plaintiff's Section 1985 and Section 1983 claims, only her state law claims remain. The Court does not have original jurisdiction over these claims and may only hear them through its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[3] But the Third Circuit has held that where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted). No such affirmative justification is apparent here.

---

[2] Judge Caplan may be entitled to judicial immunity, and Coffina and Dimassi may be able to invoke prosecutorial immunity. Further, if the ETPD's obstruction charge against Plaintiff is still pending, the *Younger* abstention doctrine may also come into play. However, the Court declines to rule on these issues until Plaintiff produces a complaint that can satisfy Federal Rule of Civil Procedure 8(a).

[3] Although Plaintiff's NJRCRA claim seeks to vindicate her rights under the federal Constitution, it does not confer federal-question jurisdiction upon this Court. *See Pena v. Town of Kearny*, No. 13-6644, 2014 WL 1666052, at *2 (D.N.J. Apr. 25, 2014) (finding that NJRCA claim referencing the federal constitution did not confer federal-question jurisdiction because "whether Plaintiffs can vindicate federal constitutional rights under the [NJ]CRA is a heavily fact dependent inquiry, that, while 'significant to the particular parties in the immediate suit,' is of little importance to the operation of the federal system itself" (quoting *Gunn v. Minton*, 568 U.S. 251, 260 (2013)).

Consequently, these claims must also be dismissed, without prejudice to refiling in a court of competent jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's application to proceed IFP is **GRANTED** but her Complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2). Plaintiff's Section 1985 claims are **DISMISSED WITHOUT PREJUDICE**; her Section 1983 claims for damages against Governor Murphy, Attorney General Grewal, and Judge Ferrelli are **DISMISSED WITH PREJUDICE**; her remaining Section 1983 claims are **DISMISSED WITHOUT PREJUDICE**; and her state law claims are **DISMISSED WITHOUT PREJUDICE** to refiling in a court of competent jurisdiction.

Plaintiff has leave to file an amended complaint, compliant with Federal Rule of Civil Procedure 8(a) and this Opinion, on or before August 12, 2020. An Order follows.

Dated: 7/22/2020                                                     /s/ Robert B. Kugler
                                                                     ROBERT B. KUGLER
                                                                     United States District Judge